# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ZAP AVIATION, LLC,

        Plaintiff,

v.                                                    Case No:   6:23-cv-1149-RBD-LHP

NXT JET, INC.,

        Defendant

## ORDER

This cause came on for consideration without oral argument on the following

motions filed herein:

---

**MOTION:**    **DEFENDANT'S UNOPPOSED MOTION TO SEAL
(Doc. No. 118)**

**FILED:**      **December 31, 2024**

---

**THEREON** it is **ORDERED** that the motion is **DENIED**.

---

**MOTION:**    **DEFENDANT'S UNOPPOSED MOTION TO SEAL
(Doc. No. 120)**

**FILED:**      **December 31, 2024**

---

**THEREON** it is **ORDERED** that the motion is **DENIED**.

| MOTION: | DEFENDANT NXT JET, INC.'S UNOPPOSED MOTION TO SEAL (Doc. No. 124) |
|---|---|
| **FILED:** | **January 7, 2025** |

**THEREON** it is **ORDERED** that the motion is **DENIED**.

## I.     BACKGROUND.

This case concerns the early termination of an Aircraft Charter and Lease Agreement ("Lease Agreement") entered by Plaintiff Zap Aviation, LLC ("Zap") and Defendant NXT Jet, Inc. ("NXT"), in August 2022.   Doc. No. 57; *see also* Doc. Nos. 1, 5, 12.   Zap's only remaining claim is for breach of contract against NXT, Doc. No. 78, and NXT has answered and filed similar counterclaims, Doc. No. 79. Discovery is now closed, and the deadline for dispositive motions lapsed on December 31, 2024.   Doc. No. 85.

As relevant to resolution of the above-styled motions, during discovery, NXT moved for a protective order.   Doc. No. 100.   On the response deadline of November 18, 2024, Zap filed a motion to file its response and related exhibits under seal, but the Court denied that motion without prejudice for failure to comply with the Local Rules the next day.   Doc. Nos. 103–04.   Zap did not renew the motion to seal, and instead filed its response and all related exhibits on the public docket on November 19, 2024.   Doc. No. 105.   The Court issued a ruling on the motion for

protective order three days later.   Doc. No. 106.   Thereafter, Zap twice filed

motions to remove four exhibits filed with its response from the public docket (Doc.

Nos. 105-1, 105-2, 105-11, 105-14), claiming that NXT marked the exhibits as

confidential during discovery.   Doc. Nos. 107, 110.   Both motions were denied for

failure to comply with the Local Rules.   Doc. Nos. 108, 113.   Zap did not again

renew the request, did not file an appeal to the presiding District Judge, and did not

seek reconsideration.   NXT likewise did not seek any relief with regard to those

Orders at that time.[1]

On December 30, 2024, Zap filed an expedited motion seeking to file its

motion for summary judgment and eighteen (18) exhibits thereto under seal,

arguing that NXT had marked such materials confidential pursuant to the parties'

confidentiality agreement.   Doc. No. 116.   The Court denied the motion the same

---

[1] In a current motion to seal under review, NXT contends that "pursuant to Local
Rule 1.11(c), NXT was to have the ability to file a memorandum in support of Zap's initial
Motions to Seal."   Doc. No. 124, at 16.   While true that Local Rule 1.11(c) states as much,
NXT fails to explain how this provision would apply to motions such as those filed by Zap,
which were wholly deficient under Local Rule 1.11(b) on their face and failed to comply
with the Local Rules.   *See* Doc. Nos. 103, 107, 110, 116.   Accordingly, the Court does not
find this argument persuasive on the facts of this case.   Moreover, NXT argues that the
documents were not "placed under temporary seal with a stay of the denial orders to
provide the requisite time to permit a motion to reconsider," Doc. No. 124, at 16, but the
Court notes that it was Zap that filed the materials on the public docket, rather than
renewing the motion to seal as permitted.   *See* Doc. Nos. 104–105; Doc. Nos. 117, 122.
Accordingly, NXT's reliance on Local Rule 1.11(d) is unpersuasive.

day for failure to establish the propriety of sealing the materials, as Zap's motion was premised entirely on the parties' confidentiality agreement, which does not alone authorize sealing.   Doc. No. 117; *see* Local Rule 1.11(a).   Zap did not renew the motion, appeal that Order, or seek reconsideration, and instead, filed its motion for summary judgment and all related exhibits on the public docket the following day.   Doc. No. 122.

For its part, NXT filed a *Daubert* motion with a redacted exhibit and a redacted summary judgment motion and several exhibits on the public docket on December 31, 2024.   Doc. Nos. 119, 121.   With those motions, NXT also filed an unopposed motion to file under seal the exhibit in support of the *Daubert* motion, as well an unopposed motion to file under seal the unredacted summary judgment motion and sixteen (16) of its related exhibits, claiming that the documents contain NXT's confidential business information.   Doc. Nos. 119, 121.   Upon review, because the documents NXT was requesting to seal appeared to overlap with those that Zap had already filed on the public docket, the Court ordered NXT to file a notice specifying which materials it sought to file under seal were already filed on the docket.   Doc. No. 123.

Before filing its notice, NXT filed another unopposed motion to seal, this time seeking to file under seal materials Zap had previously filed on the public docket, namely, the four exhibits Zap filed in response to NXT's motion for protective order

during discovery (Doc. No. 105), as well as portions of Zap's motion for summary

judgment and twenty (20) exhibits Zap had filed in support (Doc. No. 122).   Doc.

No. 124.   Thereafter, NXT filed its notice identifying which it exhibits it now seeks

to seal have already been filed on the public docket, but stating that with the

addition of its latest motion to seal (Doc. No. 124), if granted, all materials it claims

are confidential would be filed under seal.   Doc. No. 125.

On review, and for the reasons discussed below, the motions to seal (Doc.

Nos. 118, 120, 124) will be denied.

## II.   LEGAL STANDARDS.

A party seeking to file a document under seal must address the applicable

requirements set forth in Local Rule 1.11.   The moving party must also satisfy the

Eleventh Circuit's standard concerning the public's common law interest and right

of access to inspect and copy judicial records.   *See, e.g.*, *Chicago Trib. Co. v.*

*Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311–12 (11th Cir. 2001); *United States v.*

*Rosenthal*, 763 F.2d 1291 (11th Cir. 1985).   "The right of access creates a rebuttable

presumption in favor of openness of court records," *Gubarev v. Buzzfeed, Inc.*, 365 F.

Supp. 3d 1250, 1256 (S.D. Fla. 2019), which "may be overcome by a showing of good

cause, which requires balancing the asserted right of access against the other party's

interest in keeping the information confidential.   Whether good cause exists is

decided by the nature and character of the information in question."   *Romero v.*

*Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (internal quotations and

alterations omitted).[2]

"Courts draw a distinction between documents filed with discovery motions

and documents filed in connection with other types of motions."   *NXP B.V. v.*

*Blackberry Ltd.*, No. 6:12-cv-498-Orl-YK-TBS, 2014 WL 12622459, at *2 (M.D. Fla. Mar.

17, 2014).   "'[T]here is a presumptive right of public access to pretrial motions of a

nondiscovery nature, whether preliminary or dispositive, and the material filed in

connection therewith.'"   *Romero*, 480 F.3d at 1246 (quoting *Leucadia, Inc. v. Applied*

*Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993)).   Therefore, "material filed

with discovery motions is not subject to the common-law right of access, whereas

discovery material filed in connection with pretrial motions that require judicial

resolution of the merits is subject to the common-law right."   *Chicago Trib. Co.*, 263

F.3d at 1312.   "Stated another way, although there is no common law right to obtain

---

[2] Courts conducting a "good cause" balancing test consider, among other factors:
(1) whether allowing access would impair court functions or harm legitimate privacy
interests, (2) the degree of and likelihood of injury if made public, (3) the reliability of the
information, (4) whether there will be an opportunity to respond to the information, (5)
whether the information concerns public officials or public concerns, (6) the availability of
a less onerous alternative to sealing the documents, (7) whether the records are sought for
such illegitimate purposes as to promote public scandal or gain unfair commercial
advantage, (8) whether access is likely to promote public understanding of historically
significant events, and (9) whether the press has already been permitted substantial access
to the contents of the records.   *Gubarev*, 365 F. Supp. 3d at 1256 (citing *Romero*, 480 F.3d at
1246; *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)).

discovery material, a party that submits documents in connection with a motion for

summary judgment puts the information into the public domain and triggers

greater public right of access." *Regions Bank v. Kaplan*, No. 8:16-cv-2867-T-23AAS,

2017 WL 11025768, at *2 (M.D. Fla. Dec. 11, 2017) (citing *Alvey v. Gualtieri*, No. 8:15-

cv-1861-T-33MAP, 2016 WL 4129273, at *2 (M.D. Fla. Aug. 3, 2016)).

## III.   ANALYSIS.

As discussed above, NXT, without opposition from Zap,[3] seeks to file under

seal several documents: (1) a deposition transcript in support of its *Daubert* motion,

*see* Doc. No. 119-2; (2) an unredacted copy of its summary judgment motion and

sixteen (16) related exhibits, *see* Doc. No. 121; (3) four (4) exhibits filed by Zap during

discovery, *see* Doc. Nos. 105-1, 105-2, 105-11, 105-14; and (4) Zap's motion for

summary judgment and twenty (20) related exhibits filed by Zap on the public

docket, *see* Doc. No. 122, Doc. Nos. 122-3 through 122-7, 122-9, 122-10, 122-16

through 122-23, 122-25, 122-30, 122-31, 122-34, 122-38.   Doc. Nos. 118, 120, 124.

Each of NXT's requests are based on the same thing—the parties have entered

into a confidentiality agreement in this case, NXT has marked these materials

---

[3] The Court notes that while the motions are all unopposed by Zap, Zap has made previous filings in this case arguing that "NXT has aggressively marked numerous such documents and transcript portions as confidential," and that Zap "does not believe all of the documents marked as confidential necessarily merit such a designation."   *See* Doc. No. 116, at 1.

confidential under the agreement, and the materials contain NXT's confidential

business information.   Doc. Nos. 118, 120, 124.   Each motion lists the motions

and/or exhibits NXT seeks to file under seal, followed by substantially the same

conclusory explanation in each motion:

> [T]he parties' Confidentiality Agreement requires filing documents
> designated as "confidential" under seal. . . .   [T]he [document(s)]
> requested to be sealed contain highly sensitive business and financial
> information that must be sealed entirely in order to protect NXT's
> proprietary business information, negotiations, sale prices, and other
> sensitive contractual and financial information from public
> consumption.   NXT is not aware of means other than those sought
> herein that would satisfactorily preserve or protect the interests
> asserted by the Parties.   To disclose the information sought to be
> sealed would cause harm to NXT in revealing the manner in which it
> conducts its business and the financial intricacies of same.   By way of
> example, the information sought to be sealed includes sales prices,
> deposit figures, confidential letter of intent language, itemization of
> billing information, and specific revenue numbers.   This information
> goes far beyond simply being protected under a Confidentiality
> Agreement— it rises to the level of necessitating Court protection from
> public consumption in order to shield NXT's proprietary business
> information from competitors, customers, and the like.   NXT will,
> however, redact its motion to keep from public disclosure the contents
> of the document while keeping the remainder of its motion available
> for public view.

Doc. No. 118, at 5–6; Doc. No. 120, at 9–10; *see also* Doc. No. 124, at 7, 11–12

(mentioning also "banking account numbers, ABA routing numbers, Swift codes,

detailed business banking information, proprietary business information, private

negotiations, sale prices, revenue information, and other highly sensitive

contractual and financial information").

NXT does not expand on how this analysis applies to each of the filings at play, which includes hundreds of pages of documents, and instead, appears to argue that all of the materials it seeks to file under seal fall under this broad category of information which is subject to protection.   Doc. Nos. 118, 120, 124.   The undersigned does not agree.

Upon review of the materials NXT wishes to file under seal, [4] the undersigned is not clear how each of the materials would qualify for confidential treatment under governing law.   Most of the filings concern the contractual arrangement between NXT and Zap and go to the heart of this litigation, to include things like the purchase price of the aircraft, deposit amounts and whether the deposit was refundable, revenues, losses, letters of intent, wire deposits, draft contracts, agreements reached, modifications to agreements, flight costs, expenses, invoices to Zap, staffing of the aircraft and salaries, and Zap's outstanding balances. *See* Doc. Nos. 118, 120, 124, and related attachments.[5]

---

[4] Pursuant to Local Rule 1.11(b)(8), the materials have been filed under seal pending an order resolving the motions.   *See* Doc. Nos. 118, 120, 124.

[5] To the extent that NXT references bank account numbers and "detailed banking information," NXT does not explain why such account numbers or related information could not be redacted.

The Court also notes that NXT's motions contain discrepancies, for example, NXT seeks to seal different portions of the Wargo deposition transcript.   *Compare* Doc. No. 124, at 7 (citing only Tr. 25:1–8), *with id.* at 10 (discussing Tr. 25:7–21).   Moreover, at least one deposition transcript page is not included with the proposed sealed filings.   *Compare* Doc.

Besides stating that these materials are "confidential" or "proprietary," and providing blanket assertions, NXT makes no effort to explain how each of the specific materials are entitled to confidential treatment under governing law or how each of the materials contain the proprietary information that NXT claims. Nor is it the Court's job to make that argument for NXT, or to sift through hundreds of pages to find the confidential information NXT wishes to protect. And, as the Court has previously cautioned the parties, "[s]ealing is not authorized by a confidentiality agreement, a protective order, a designation of confidentiality, or a stipulation" alone. Local Rule 1.11(a); *see also NXP B.V.*, 2014 WL 12622459, at *2 ("The parties' agreement to seal court documents 'is immaterial' to the public's right of access." (quoting *Brown v. Advanatage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992))).

Thus, upon consideration of NXT's conclusory arguments regarding the confidential nature of the materials at issue, the Court does not find that NXT has satisfied its burden of demonstrating that each of the materials at issue should be sealed. *See Kaplan*, 2017 WL 11025768, at *2 ("Defendants' blanket assertion that the subject exhibits contain confidential business or financial information is insufficient to show good cause for sealing the filings." (citing *Aldora Aluminum &*

---

No. 120, at 6 (referencing Zappone Tr. 132:21–25, Exhibit D), *with* Doc. No. 120-4, at 35–36 (omitting page 132).

*Glass Prod., Inc. v. Poma Glass & Specialty Windows, Inc.*, No. 3:14-cv-1402-J-34JBT,

2016 WL 7666128, at \*2 (M.D. Fla. June 13, 2016)); *see also Rodriguez v. Magic Burgers,*

*LLC*, No. 6:19-cv-1656-CEM-LRH, 2021 WL 3017528, at \*2 (M.D. Fla. Mar. 24, 2021)

(denying motion to seal in relation to summary judgment, stating: "The Defendant's

conclusory statement that the documents at issue contain proprietary information,

trade secrets, and are subject to protection under the parties' confidentiality

agreement falls short of rebutting the presumption in favor of openness."); *Allstate*

*Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-Orl-41LRH, 2020 WL 6870755, at \*3

(M.D. Fla. Oct. 22, 2020) (denying motion to seal summary judgment and *Daubert*

materials for failure to demonstrate that the materials were subject to confidential

treatment under governing law); *Sarasota Cty. Pub. Hosp. Dist. v. MultiPlan, Inc.*, No.

8:18-cv-252-T-27AAS, 2019 WL 1244963, at \*2 (M.D. Fla. Mar. 18, 2019) (denying

motion to seal dispositive motions in limine and exhibits filed in support of

summary judgment for failure to establish good cause for sealing).[6]

---

[6] Outside of general legal principals regarding the propriety of sealing information and the public right of access, NXT cites three cases to support its argument that sealing its confidential business information is appropriate, but each is unpersuasive to the situation here.   Doc. No. 118, at 3–4; Doc. No. 120, at 5; Doc. No. 124, at 6.   Neither *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-J-JBT, 2010 WL 6790538 (M.D. Fla. Oct. 28, 2010), nor *Patent Asset Licensing, LLC v. Bright House Networks*, LLC, No. 3:15-cv-742-J-32MCR, 2016 WL 2991057 (M.D. Fla. May 24, 2016), concerned requests to file documents under seal at the summary judgment stage.   And the Court finds *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11-cv-694-FtM-29CM, 2014 WL 1569149 (M.D. Fla. Apr. 17, 2014), which concerned motions in limine, unpersuasive because the case was decided under a

This is particularly true given that NXT wishes to file these materials in

conjunction with *Daubert* and summary judgment motions – motions which by their

nature address the key issues and defenses of the case and determine whether and

to what extent expert testimony can be presented at trial. [7]   By attaching the

exhibits at issue to these motions, NXT is representing that the information

contained in the exhibits goes to the heart of this litigation, will likely be necessary

to and discussed in rulings by the Court (rulings which will be filed publicly), and

will be necessary for NXT's case at trial should the case proceed that far (a trial

which will also be public).   Given the large swaths of information that NXT seeks

to seal in conjunction with these dispositive issues, and absent further cogent

explanation from NXT as to why each of the filings at issue are entitled to protection

---

prior version of the Local Rules and presented different circumstances because it was a patent infringement case.   NXT cites one additional case, *Microlumen, Inc. v. Allegrath*, No. 8:07-cv-350-T-17TBM, 2007 WL 1247068 (M.D. Fla. Apr. 30, 2007), but that case not only did not address sealing at the summary judgment stage, but the court also denied the request to seal for failure to provide sufficient detail.

[7] Although NXT's motions include a request to file under seal materials filed by Zap on the public docket during discovery, those materials are duplicative of those NXT wishes to seal in conjunction with summary judgment.  *Compare* Doc. No. 105-1 (Kevin Wargo deposition transcript), Doc. No. 105-2 (Christopher Tasca 30(b)(6) deposition transcript); Doc. No. 105-11 (Williams Jeffreys deposition transcript), *and* Doc. No. 105-14 (Christopher Tasca deposition transcript), *with* Doc. No. 122-3 (Christopher Tasca 30(b)(6) deposition transcript), Doc. No. 122-4 (Kevin Wargo deposition transcript), Doc. No. 122-9 (William Jeffreys deposition transcript), *and* Doc. No. 122-38 (Christopher Tasca deposition transcript).  *See* Doc. No. 124, at 7–10; *see also* Doc. No. 120, at 6–9. Accordingly, the same analysis applies.

under governing law, NXT has not overcome the presumption of public right of

access.  *See Rodriguez*, 2021 WL 3017528, at \*2; *Auto Glass Am., LLC*, 2020 WL

6870755, at \*3; *Sarasota Cty. Pub. Hosp. Dist.*, 2019 WL 1244963, at \*2; *Kaplan*, 2017

WL 11025768, at \*2.

Accordingly, upon due consideration, NXT's motions (Doc. Nos. 118, 120,

124) will be denied.

## IV.    CONCLUSION.

For the reasons stated herein, NXT's unopposed motions to seal (Doc. Nos.

118, 120, 124) are **DENIED**.   This Order is stayed until January 27, 2025 to permit

an appeal to the presiding District Judge, if deemed appropriate.   *See* Local Rule

1.11(d).   On or before **January 27, 2025**, NXT shall either file its appeal, or file its

*Daubert* motion and related unredacted exhibits (Doc. No. 119) as well as its

unredacted motion for summary judgment and related unredacted exhibits (Doc.

No. 121) on the public docket.

**This Order does not alter any existing case management deadlines, and in

particular deadlines related to summary judgment or *Daubert* motions briefing,

including responses and replies are not extended by this Order.   *See* Local Rule

3.01(c); Doc. No. 48, at 12.**

- 13 -

**DONE** and **ORDERED** in Orlando, Florida on January 13, 2025.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties